Francisco Velasco III
Pro Se Litigant
13275 Spendlove Drive
Anchorage, Alaska 99524
Telephone: (406) 595-8887



RECEIVED

MAR 18 2022

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

IN THE UNITED STATES DISTRICT COURT DISTRICT
FOR THE DISTRICT `OF ALASKA

FRANCISCO VELASCO III,

    Plaintiff,

vs.

Deb Haaland, Secretary of the U.S. Department of the Interior, *in her official* capacity

    Defendant(s).
_____/

CASE NO.:

**JURY TRIAL DEMANDED**

COMPLAINT UNDER
THE CIVIL RIGHTS ACT of 1964, as
amended, 42 U.S.C. § 2000e et seq

**COMPLAINT FOR DAMAGES**

Plaintiff, Francisco Velasco III ("Plaintiff" or "Mr. Velasco"), hereby files this complaint against Deb Haaland, in her official capacity as Secretary of the U.S. Department of the Interior ("Defendant" or "Agency") and states as follows:

**INTRODUCTION**

1. Mr. Velasco, a Filipino Mexican American and dedicated government employee, endured a hostile work environment at the National Park Service's Alaska Regional office along with earlier EEO complainants. Mr. Velasco has worked as a civilian employee Contract Specialist since August 2019.

2. Mr. Velasco suffered from discriminatory remarks such as being referred to coming back from Mexico as a "Dark Little Indian," to enduring the berating of Asian's. Mr. Velasco has both Mexican and Asian heritage.

3. The Agency through malfeasance, utilized methods of investigation to doctor and suppress evidence to impede Mr. Velasco from engaging in protected EEO activity. The evidence will show that the Defendant employed these same prohibited practices before with others who had previously filed EEO complaints. This nourished a hostile work environment for years denying equal employment opportunity to Mr. Velasco and others at that National Park Service (NPS). This is further substantiated by the discrimination, retaliation, and reprisal under the umbrella of a hostile environment that has also been well documented by the Department of the Interior and NPS itself as seen in the summary NPS Voices tour (2018). *See https://www.nps.gov/aboutus/upload/NPS-VOICES-FINAL-REPORT-11-17-19.pdf*

4. NPS Responsible Management Official (RMO) Yvonne RMO 1 Regional Chief of Contracting in Alaska, herein known as "RMO 1" and her employee, Amanda Employee 1 herein known as "Employee 1" separately and together discriminated and projected disparate, and differential treatment against Mr. Velasco based on his race, color, and national origin appearance.

5. Retaliation and reprisal ensued as Mr. Velasco sought to put an end to the discriminatory predation at the Agency's Alaska Regional Office (AKRO) which repeatedly violated a protected classes of people.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over all Counts pursuant to 28 U.S.C. § 1331 because these claims arise under the laws of the United States.

7. Venue is proper in this district under 28 U.S.C. § 139 1(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

8. This Court may grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 § 2202.

## ADMINISTRATIVE PREREQUISITES

9. Mr. Velasco timely filed a charge of discrimination, reprisal, and retaliation for prior protected EEO activity. The formal complaint was deemed filed May 4, 2021, hereinafter referred to as "May 2021 Charge".

10. On May 10, 2021 the defendant acknowledged Mr. Velasco's May 2021 Charge.

11. On December 20, 2021 the defendant, issued a Final Agency Decision (DOI-NPS-21-0181) that dismissed Mr. Velasco's formal complaint and advised Mr. Velasco that he had a right to file a civil action in an appropriate U.S. District Court within (90) calendar days of receipt of Final Decision.

## PARTIES

12. Mr. Velasco is a United States citizen, resident of Anchorage, Alaska, is 41 years old, a proud father, a veteran, holds a master's degree, and is a civilian employee of the National Park Service.

13. His name, Francisco Velasco III, can signal the way he is perceived, since his name is not a common Caucasian name. At times, he is confused with being foreign born and raised. Mr. Velasco's race and ethnicity are mixed, Filipino (Asian) Mexican American (Latino/Hispanic). His physical characteristics is that of a male, but the shape, and size of his eyes, nose, bone structure, the brown color of his skin and eyes, including the tone and sound of his voice, clearly makes him distinct from an American Caucasian. Language, cultural factors,

and mannerisms in his upbringing also give Caucasian Americans the impression that his national origin is foreign.

14. Defendant is an employer and federal agency as defined by the laws under which this action is brought.

## SUPPRESSION OF EVIDENCE

15. The validity of any claim and the application of the rule of law rely heavily on facts and supporting evidence. The subverting of any evidence is both criminal and unfairly denigrates the rule of law and its participant(s) ability to bring a legal claim(s) before the court.

16. The agency has suppressed evidence, which has impacted 3 known NPS EEO cases, NPS-18-0142, DOI-NPS-17-0141, and DOI-NPS-21-0181 pertaining to Mr. Velasco's case. NPS employed a standard operating procedure (SOP) that infringed and misrepresented facts in Mr. Velasco's EEO complaint and previous EEO complainants identified as NPS Alaska Contracting Officer Darcy Skinner herein known as "Skinner" and former NPS Alaska Contracting Officer Nicole Noyles herein known as "Noyles."

17. Witnesses 1, 2, 3, and 4, have direct knowledge and prime facie evidence regarding NPS's suppressing information SOP impacting the National Park Service as a whole and highlighted at the NPS Alaska Regional office.

## FACTUAL ALLEGATIONS

### AGENCY TAILORED INVESTIGATION & SUPPRESSION OF EVIDENCE

18. On September 16, 2021 Mr. Velasco provided the Defendants EEO investigative service Clark Williams, herein known as Investigator 1, the names and contact information for Skinner and Noyles who witnessed EEO violations by RMO 1 and Employee 1, which were relevant to Mr. Velasco's EEO complaint.

19. On September 17, 2021 Investigator 1 contacted Mr. Velasco stating the investigation had been completed without Skinner or Noyles statements. The investigator stated "when the agency reviews cases they only prefer statement from officials and witnessed directly involved". In doing so, the Defendant denied Mr. Velasco an objective gathering and analysis of the evidence that would show RMO 1 created a hostile work environment, reprisal, and retaliation against persons engaged in protected EEO activity. Questionably, the investigative service that investigated Mr. Velasco's EEO complaint also conducted Skinner's EEO investigation, which led to a Defendant favored result.

20. On September 17, 2021 Mr. Velasco responded to the investigator stating that the "agency's preference as to what witnesses and information can be admitted for review is not law and minimizes fact finding." Mr. Velasco referenced Skinner and Noyles by stating "their historical EEO activity should be taken into account because it shows a history of EEO violations against a protected class of people, a hostile environment unchecked by the agency, and management taking care of management."

21. Mr. Velasco conveyed that Skinner and Noyles information is directly related to his case and if the agency had taken action in previous EEO cases against RMO 1 and Employee 1 then maybe his rights would not have been violated. Thus showing the Defendant nourishes a hostile environment, misconduct by management, and unchecked discriminatory practices for years.

22. Mr. Velasco's plea for the investigation to be done justly was overlooked and Skinner and Noyles were not included.

23. Previous to the agency tailored investigation Mr. Velasco noted persistent deception and disinformation regarding employees who attempted to report the Defendant's wrongdoing. In RMO 1's interrogatory to Investigator 1, digital manipulation occurred when RMO 1 conveyed

that the employee relations specialist had to tweak the Defendants HR Harassment Tracker so RMO 1 could be within the reporting time period of Mr. Velasco's complaint, thus violating policy and disregarding established processes.

24. On July 15, 2021 Mr. Velasco received an email from responsible management official Barbara Green, the Regional EEO Manager Herein known as "RMO 2" requesting Mr. Velasco answer a set of EEO related questions. RMO 2 went on to convey that she was going to send this to the investigator. RMO 2 underlined the need for Mr. Velasco to meet a strict deadline as if to portray Mr. Velasco was not responsible.

26. On July 24, 2021 Mr. Velasco emailed investigator 1 inquiring if there were two investigations going on because he was being asked similar EEO related questions by RMO 2. Investigator 1 stated he was not aware of another investigation and referred Mr. Velasco back to RMO 2.

27. On July 26, 2021 Mr. Velasco emailed RMO 2 stating that the questions she was asking were similar to those that the investigator was asking, so he was not sure the reason for the questions. Mr. Velasco asked if two investigations were going on concurrently. RMO 2 responded with purposeful confusion as to Mr. Velasco's inquiry and developed a varied excuse.

28. On July 14, 2021, RMO 2 an experienced manager, emailed Mr. Velasco under the pretext of her role and stated the investigator contacted her with a document request that required Mr. Velasco's input yet on the same day in a different email, RMO 2 stated she had no idea the investigator was going to contact Mr. Velasco regarding a document request submission. This indicated RMO 2 was misrepresenting facts, as Mr. Velasco is the initiating party of the EEO investigation as such would be required to answer questions.

31. Steadfast in misrepresentation RMO 2 stated that based on her experience she does not highlight questions on the enumerated document list because since one question may apply to multiple people, yet RMO 2 sent Mr. Velasco an enumerated document list that was highlighted.

32. RMO 2 knowing Mr. Velasco had caught on to the distortion of the EEO process, issued an apology.

## **DISCRIMINATION**

33. Mr. Velasco has suffered needlessly at the hands of RMO 1 and Employee 1. Both made demeaning and discriminatory comments of race, color, and national origin causing Mr. Velasco to receive disparate and differential treatment than his Caucasian colleagues which resulted in reprisal and retaliation.

34. In August of 2019, Mr. Velasco worked for his first line Supervisor, Contract Specialist - Brian Barcelona (Barcelona) herein known as "MABO 1" up until January of 2021 with limited contact with RMO 1 and the Employee 1. Even though RMO 1 had limited contact with Mr. Velasco, she had on several occasions demeaned Mr. Velasco for unknown reasons.

35. On one of those occasions Mr. Velasco reported RMO 1 to Barcelona telling him she had yelled at him without cause. MABO 1 said to just ignore her.

36. On September 18, 2020, RMO 1 again demeaned Mr. Velasco when she contacted an IT employee, John Solomon, herein Known as "IT Employee", via email and copied Mr. Velasco's Supervisor MABO 1. RMO 1's email to Mr. Velasco was a rudimentary explanation on how to use the camera on his computer in an attempt to make him look incompetent. Mr. Velasco responded to RMO 1 stating he had recently received a new computer from IT, which did have a camera, so he now had camera capabilities.

37. During January 2021, MABO 1 left NPS and RMO 1 became Mr. Velasco's first line supervisor in addition to being his second line supervisor. RMO 1 also assigned Employee 1 to work with Mr. Velasco on various projects. This direct contact with RMO 1 and Employee 1 is when Mr. Velasco began to experience a higher degree of disparate and differential treatment from his Caucasian peers.

38. On February 12, 2021, Employee 1 emailed Mr. Velasco and copied RMO 1 and stated that the information Mr. Velasco annotated on a Purchase Request Status Sheet was misleading. Mr. Velasco recognized that Employee 1 was singling him out without cause. The blocks of information that Employee 1 was referencing had actually been missing since FY 19, FY20, and FY21. Ironically, the employees responsible for the missing information that were not included in the email were Caucasian.

39. On February 19, 2021 Employee 1 described her relaxed employee employer relationship with RMO 1. Employee 1 went on to say she told RMO 1 to pull the "Corn Cobb out of her ass" and that "whatever drugs she is on to stop it and if she is not on any to use some." Employee 1 also stated RMO 1 would allow her extra lunch time, which she used for things such as her gym. This behavior is clearly crossing the bounds of proper employee employer relationship, but also illustrates the disparate, differential treatment, and misuse of the Defendants time reporting that is accorded at the NPS AKRO

40. On February 23, 2021, Mr. Velasco became aware that Employee 1 was racist and that her actions towards him were discriminatory based on his race, color, and national origin. On the same date, Mr. Velasco and Employee 1 were on a work-related call when the Employee 1 mocked vendors who she believes have an "Asian accent" who she singled out. The mocked vendor company is Alaska Janitorial, Inc out of Kotzebue, AK. Employee 1 also believes Mr.

Velasco has an accent. On May 5, 2021 Employee 1 affirmed on an EEO counselor report that there was a vendor in a family type business that she could tell it was an "ESL situation" by the way the document were written, further highlighting her disdain for people she believed to be Asians and encapsulated discrimination she bonded with writing ability and people she believed to be of a different national origin.

41. Employee 1 apologized to Mr. Velasco for mocking Asians, but her disparate and discriminatory behavior towards Mr. Velasco continued as she required Mr. Velasco to do extra work like compile FAR reports for each quote received against an RFQ when the Federal Acquisition Regulation requires the FAR report to only be compiled and saved before an award resulting in more work for Mr. Velasco whereas his Caucasian colleagues did not have to compile a FAR report for each quote received against an RFQ. Employee 1 also made it known during a meeting that she made Mr. Velasco do this, further isolating him from his colleagues.

42. On March 3, 2021, Mr. Velasco became aware that RMO 1 was racist and that her actions towards him were discriminatory because of his race, color, national origin when she referenced Mr. Velasco's trip to Mexico. RMO 1, a Caucasian manager who supervises Mr. Velasco, stated that he was going to come back a "Dark Little Indian" ostracizing him based on his race, color, national origin. This comment also isolates Mr. Velasco from his Caucasian colleagues. Later, on the EEO counselor report dated May 5, 2021 RMO 1 reaffirmed the Defendants nourished hostile environment and RMO 1 discriminatory views by stating she is aware "Indians and Mexicans don't actually get along" and no inquiry into her comment was made.

43. On March 19, 2021 Mr. Velasco reported Employee 1's discriminatory behavior towards Asians.

44. On March 22, 2021, RMO 1 responded to Mr. Velasco's complaint by stating Mr. Velasco's email blindsided her, but more importantly, RMO 1 purposely misrepresented material facts by stating that:

> *You are requesting to have an assignment change to a different CO and indicate that you would like to work with, "... someone who is okay with diversity and does not feel the need to bully, yell, or make fun of other cultures or people." I can assure you that every person on this team is not only "okay" with diversity, but rather "EMBRACES" diversity. As for feeling the need to "bully, yell, or make fun of other cultures or people," I am distressed to hear that this is happening on my team.*

45. RMO 1 misrepresented facts as she is the recipient of two known EEO complaints (NPS-18-0142 & DOI-NPS-17-0141), both complaints were from employees who worked for RMO 1. RMO 1 took no action on Mr. Velasco's complaint regarding Employee 1's discriminatory comments regarding Asians.

46. On March 23, 2021, Mr. Velasco considered RMO 1's and Employee 1's EEO history and comments regarding their EEO victories and boastful remarks about the protection provided to them by senior management identified as the Regional Director, Business Services and Administration Christina Caswell, herein known as "ARD" who in one instance, interfered in an EEO process on behalf of RMO 1, which was later verified by Witnesses 5 and 6.

48. The ARD protection prompted Mr. Velasco to seek EEO assistance outside of the NPS's Alaska Regional Office to bring attention to RMO 1's unrestrained retaliation and reprisal against Mr. Velasco for coming forward with his EEO complaint. Mr. Velasco emailed the Director of the National Park Service, Department of Interior's Office of Civil Rights and an

Executive leader from the National Park Service. Each responded to Mr. Velasco directly or to RMO 2.

## RETALIATION & REPRISAL

49. Even after RMO 1 was aware that the Director of the National Park Service (NPS) and the Department of Interiors Office of Civil Rights had been contacted, she continued to intimidate and retaliate against Mr. Velasco.

50. On March 23, 2021, RMO 2 notified the National Park Service's Alaska Region of the U.S. Equal Employment Opportunity Commission's (EEOC) "Resolution of the U.S. Equal Employment Opportunity Commission on Condemning Violence, Harassment, and Bias Against Asian Americans and Pacific Islander in the United States."

51. The EEOC's resolution had no effect on RMO 1 as she continued her campaign of retaliation when on the same day, she sent an email deliberately and prematurely terminating a meeting with Mr. Velasco's regarding a boiler project he was working on that was also terminated by Employee 1 on a previous occasion. The coalesced boiler meeting termination by RMO 1 and Employee 1 created an illusion that Mr. Velasco was not performing his job and not cooperating.

52. Mr. Velasco responded to RMO 1's meeting cancellation email and highlighted the facetious statement she made during a meeting by derisively stating "Franciscoooo, is the only buyer" intentionally isolating him. Mr. Velasco again asked RMO 1 to stop isolating him. During the same meeting, an employee confronted RMO 1 and Employee 1 regarding the differential treatment Mr. Velasco was receiving and conveyed there should not be a different standard applied to Mr. Velasco.

53. On March 26, 2021 RMO 1 continued her reprisal against Mr. Velasco by fixating on the hours he worked on a flex/non-core hour day. RMO 1 tried to describe these hours worked as not following policy which contradicted what she had previously stated (that the core hours are 9:30AM – 3:00PM for Monday, Tuesday, Wednesday, Thursday, and that Friday is a flex day). RMO 1 agreed that a projected schedule is just that, a projection of the time we are going to work. RMO 1 went on to take a screen shot of Mr. Velasco's projected hours and hours worked for emphasis to characterize non-compliance even though RMO 1 knew Mr. Velasco was in compliance.

54. On March 26, 2021, RMO 1 continued with her retaliation and reprisal by emailing Mr. Velasco to prevent him from using NPS IT resources, even though on March 23, 2021 she witnessed him having IT Problems that could not be resolved without IT assistance. In contrast, RMO 1 does not prevent any of Mr. Velasco Caucasian colleagues from using IT resources. Mr. Velasco emailed RMO 1 and conveyed for her to stop the retaliation and reprisal, which was preventing him from effectively accomplishing his job.

55. On March 30, 2021, Mr. Velasco and Simon Evans, Regional Mechanical Engineer herein knowns as "Engineer 1" were working on a boiler project, but were confused by RMO 1's instruction of March 26, 2021. Engineer 1 recommended that it would be better to get some clarity from RMO 1. Mr. Velasco emailed RMO 1 on March 30, 2021 and she responded by illuminating her previous instructions of March 26, 2021. RMO 1 did so to portray Mr. Velasco look as incompetent before Engineer 1.

56. On May 12, 2021 Jeff Moss, former acting Director of AKRO herein known as " RMO 4" addressed the need for greater diversity and the long standing issues the agency has had regarding the lack of respect and harassment further supporting the issues Mr. Velasco's claim

that the agency nourished an environment of hostility and allowed a repeat EEO violator RMO 1 to continue to violate EEO laws that negatively impact a protected class of people.

57. Mr. Velasco's EEO activity has also resulted in retaliation and reprisal from higher NPS authority when they instituted a late 16E internal process with Mr. Velasco. The 16E process should be to protect victims of EEO discrimination and not subject them to forced revictimization. The 16E internal process removes basic protection afforded under the US Constitution. In fact, NPS instituted this 16E process 26 days late. The 16e process was used to minimize and circumvent the EEO process as well as dissuade Mr. Velasco from continuing in the EEO process.

58. This process titled Directors Order #16E: National Park Service Anti-Harassment Policy endorsed by the Trump Administration and effectively executed on April 19, 2018 removes Mr. Velasco's right to having an attorney and compels compliance via threat by stating the potential for disciplinary actions for non-compliance. The Defendants 16E Policy violates Mr. Velasco's 5th, 60th, and 14th Amendment rights, which affords him the right to legal representation.

59. What is even more disturbing is that the Defendant can force video/audio recording of interviews with the same 16E compliance authority. This can be likened to an enemy combatant captured on the battlefield, but the enemy combatant is processed with more rights since they are allowed to have an attorney.

60. This 16E policy makes a passing reference to "authorities pertaining to civil rights" as if bonding the words "pertaining" and "civil rights" alleviates the Defendant from following established federal rules and procedures as was the case in Mr. Velasco's EEO activity.

61. On March 24, 2021 Mr. Velasco was contacted by Felicia Nickelberry, Human Resources Specialist (ELR), Employee Relations Lead, AKR Harassment Prevention & Response Program

Manager, Civil Treatment Instructor for the Alaska Region herein known as "RMO 5". RMO 5 also stated for emphasis that she was an "investigator" and has represented the Agency in the past.

62. Mr. Velasco and RMO 5 exchanged communication regarding his EEO Complaint to which Mr. Velasco conveyed he elected to go through the EEO process. RMO 5 accepted Mr. Velasco's choice and conveyed that "if you decide to file a claim under the Anti-harassment, 16E process or have any questions please let me know."

63. On April 20, 2021 Mr. Velasco was emailed by investigator Dave Davies, herein known as "DC Investigator" of the National Park Service's Washington Office about conducting an interview and that documents he sent needed to be signed. Mr. Velasco reviewed the documents and they appeared unconstitutional as they effectively revoked his right to have an attorney present among other basic rights. The documents sent to Mr. Velasco from the DC Investigator issued an authorization to investigate another Defendant misconduct complaint by staff at Great Falls Park, collectively underlining the Defendants overwhelming amount of complaints that other complaints are etched into formal documents for new complainants.

64. On April 21, 2021 Mr. Velasco emailed RMO 5 regarding his concerns with the 16E process, not being allowed an attorney, disciplinary action, and the questionable timing of the investigator contact after being issued the right to file a Formal EEO Complaint.

65. RMO 5 avoided responding by email and called Mr. Velasco instead. When Mr. Velasco inquired as to why he could not have an attorney and explaining that someone calling him a DARK LITTLE INDIAN was an EEO matter and not a 16E process. RMO 5 described how an attorney, employee relations specialist, and management official had deemed Mr. Velasco's EEO case subject to a 16E process. Mr. Velasco continued to ask why he could not have an attorney

present and RMO 5 went into an offensive posture stating he was interrupting her, then stating Mr. Velasco was being unprofessional, and ended the call by hanging up on Mr. Velasco.

66. Mr. Velasco responded to RMO 5's evasive and unprofessional behavior by emailing RMO 5 and conveying his belief that she was creating a negative event to distort the facts in hopes of gaining an advantage outside of Mr. Velasco's EEO process. It was clear that RMO 5 utilized the defendant's clandestine methodology in minimizing written communications so as to dispel verbal communications and turning them into hearsay to avoid potential liability, further suppressing evidence that could be used to establish an EEO violation.

67. Mr. Velasco has learned that RMO 5 in her current role communicates with ARD who has interfered in the AKRO EEO process in the past regarding both Skinner and Noyles cases.

68. Mr. Velasco's complaint, and the resulting reprisal and retaliation, has caused him to continue to suffer irreparable loss and injury, including but not limited to humiliation, embarrassment, mental and emotional distress, anxiety, and an unrecoverable character assassination.

## CLAIMS FOR RELIEF

## I. HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.)

Mr. Velasco incorporates by reference the allegations in paragraphs 1 - 68 as though fully set forth herein.

69. Mr. Velasco suffered a hostile work environment when, within the workplace and despite numerous requests and complaints, he was subjected to the use of racial slurs and derogatory comments about his race, color, and national origin.

70. The use of these slurs, comments, and degrading demands both ridiculed and insulted the racial groups of which Mr. Velasco is a member and was sufficiently severe and pervasive to alter the conditions of his employment and created an abusive working environment.

71. Mr. Velasco did not tacitly or explicitly welcome this harassing conduct.

72. The slurs, comments, and degrading demands singled out people of color, Asians, Mexicans, indigenous populations, in violation of the Civil Rights Act and because of Mr. Velasco's race, color, and perceived national origin was subjected to this iniquitous environment.

73. The Defendant had actual notice of the discrimination and harassing conduct because of Mr. Velasco's complaint and formal EEO complaints regarding RMO 1 by Skinner and Noyles and refused to take steps to mitigate the discrimination, harassment and create a safe and lawful working environment for Mr. Velasco; including failing to take corrective action against the individuals Mr. Velasco reported.

74. The Defendant's lack of response to Mr. Velasco's complaints of discrimination was based on Mr. Velasco's race, color, and national origin.

75. The Defendants harassing conduct and its lack of response thereto constitutes a discriminatory hostile work environment in violation of 42 U.S.C. § 2000e et seq.

76. As a direct and proximate result of this hostile work environment, Mr. Velasco has suffered, and in the future will continue to suffer, irreparable pain, suffering, loss, and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety, and the denial of his rights to equal employment opportunities.

77. Through the Defendants own actions and the actions of its employees, agents, and/or representatives described above, the Defendant acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Mr. Velasco's rights.

**II. RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.**

77. Mr. Velasco incorporates by reference the allegations in paragraphs 1 - 68 as though fully set forth herein.

78. In violation of Title VII, the defendant discriminated against Mr. Velasco because he made a charge of employment discrimination. Mr. Velasco engaged in protected activities including, but not limited to, filing internal complaints with defendant leadership, and filing EEO complaint.

79. As a result of Mr. Velasco's protected activities, the Defendant took adverse actions against Mr. Velasco, including, but not limited to, the following:

a. Differential treatment

b. Denial of legal representation

d. Suppression of evidence

80. The Defendant has unlawfully retaliated against Mr. Velasco in violation of Title VII by taking retaliatory actions against him in response to protected activity.

81. As a result of the Defendant's discriminatory and retaliatory actions, Mr. Velasco has suffered economic loss, humiliation, embarrassment, pain, suffering, psychological and

emotional harm, severe emotional and psychological distress, and damage to his career and character.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that the practices described in this Complaint have created a hostile work environment in violation of 42 U.S.C. § 2000e et seq.;

B. Issue a permanent injunction-prohibiting Defendant from engaging in the discriminatory employment practices described herein and from engaging in all retaliatory activities against Mr. Velasco, and further requiring Defendant to take steps to foster an inclusive environment for all protected classes of people to the same extent it does for other racial groups and other genders;

C. Issue an order directing Defendant to take the following actions:

i. A review and revision of the 16E process to allow all employees legal representation and all constitutional rights at any stage during the process.

ii. 24 Months of paid leave

iii. Award Plaintiff actual, compensatory, punitive damages in an amount to he proven at trial;

iv. A ten million dollar fund to be donated equally to the Native American Rights Fund, Asian American Legal Defense and Education Fund, League of United Latin American Citizens, and the American Civil Liberties Union

v. Award Plaintiff reasonable attorneys' fees and costs;

vi. Award Skinner and Noyles $10,000,000.00 each;

vii. Award $10,000.000. to Mr. Velasco;

viii. Notification to all claimants for the last 20 years who have engaged in any legal or administrative process such as EEO related cases, 16E investigations, criminal cases, and FOIA requests who feel suppression of evidence may have occurred that they have the right to file in federal court.

## JURY DEMAND

Plaintiff demands trial by jury on all Counts of the Complaint

_____       3/18/2022
Francisco Velasco III      Date
Pro Se Litigant
13275 Spendlove Drive
Anchorage, Alaska 99524
Telephone: (406) 595-8887